UNION INVESTMENT COMPANY OF NEW JERSEY, APPEL-LANT, v. PETER J. McDONOUGH ET AL., RESPOND-ENTS.

Submitted December 8, 1920—Decided March 1, 1920.

One R, who was the owner of certain mortgaged premises, consisting of a building and the land upon which it was erected, leased to M some of the rooms therein. Afterward he conveyed a part of the premises (not embracing the rooms leased to M) to W and B. Still later he conveyed the remainder of the property to P, subject to the leasehold estate of M. Upon a foreclosure of the mortgage it was ordered that the premises be sold in parcels in the inverse order of alienation; first that sold to P, and then that sold to W and B, no reference being made to the leasehold estate of M. *Held*, that the purchaser at the sheriff's sale of the parcel owned by P took it subject to M's lease.

On appeal from the Supreme Court.

For the appellant, *Samuel Koestler.*

For the respondents, *William Newcorn* and *Winfield S. Angleman.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This appeal brings before the court for review a judgment in favor of the defendants in an ejectment suit, tried before Judge Silzer without a jury. The premises involved in the litigation consist of a bedroom and bathroom, together with a portion of a cellar, parcel of a large building located in the city of Plainfield, and known as the city market.

The facts material to the determination of this appeal are not in dispute, and are as follows: On February 1st, 1887, one Dan S. Roberts was the owner of the city market. On that day he and his wife executed a mortgage for $20,000 to the Prudential Insurance Company of America, the mortgage covering the whole of the property, including the *locus in quo*.

On January 1st, 1894, Roberts made a lease of the bedroom, bathroom and cellar for a term of ninety-nine years to one John McVey.

On January 20th, 1898, Roberts and his wife made a conveyance to Lemuel Woolston and James Buckel of a certain portion of the city market property, not, however, any part of the premises leased to McVey.

On May 14th, 1900, Roberts conveyed to Julia Peck the city market property, except so much thereof as had already been aliened by him. This conveyance was made "subject to the rights acquired in said premises by a certain indenture made by Roberts on January 1st, 1894, to John McVey;" this indenture being the ninety-nine-year lease already referred to.

In March, 1903, the Prudential company assigned their mortgage to one Hazeltine, and some months afterward Hazeltine instituted foreclosure proceedings upon it. The foreclosure went to final decree, execution was issued thereon, and

so much of the mortgaged premises were sold as was necessary to satisfy the decree.

The present plaintiff holds by mesne conveyances the title acquired by the purchaser at the sheriff's sale. The defendants are the assignees of the lease made to McVey; and the question presented to us for determination 'is whether the McVey lease was extinguished by the foreclosure sale.

That the leasehold interest of McVey was subject to the Prudential mortgage is not controverted. It is also conceded that it was the right of the holder of the mortgage to have the leasehold interest sold, if that course was necessary in order to raise the moneys required for the satisfaction of the mortgage. The dispute between the parties turns upon the question whether or not such sale was, in fact, made. Upon examination of the final decree in the foreclosure suit we find that it was ordered, adjudged and decreed, that the mortgaged premises, *or so much thereof as might be necessary for the purpose,* should be sold, to raise, pay and satisfy the amount due to the complainant, and that for the purpose of raising and paying such sum a writ of *fi. fa.* should issue to the sheriff of Union county, commanding him to make sale of the mortgaged premises in parcels, and in the inverse order of their alienation by Roberts, and that the sale should be in this order: first, the parcel sold and conveyed by Roberts to Julia Peck, and if this parcel did not realize sufficient to pay the complainant's mortgage, then, secondly, the parcel sold by Roberts to Woolston and Buckel. No reference is made in this part of the decree to the leasehold interest of McVey. The execution follows the decree, and, like it, contains no reference to the leasehold. At the sheriff's sale the first parcel produced not only enough to satisfy the mortgage in full, with interest, costs, &c., but a surplus of considerable amount, which was paid into court.

The contention on the part of the plaintiff is that because of the omission in the decree and execution of any reference to McVey's leasehold interest, and because of the further fact that the description in the execution of the parcel to be first sold (that is, the property sold to Mrs. Peck) is by metes

and bounds, and necessarily embraces the bedroom, bathroom and cellar leased to McVey, the necessary implication is that this leasehold was included in the first parcel to be sold. The fact that the property sold to Mrs. Peck is described in the execution by metes and bounds seems to us to be without significance in the determination of the rights of the present parties. It properly described the boundaries of the land conveyed to Mrs. Peck, and it included in the description the bedroom, bathroom and cellar. The effect of the conveyance by Roberts to Mrs. Peck was to vest in her the title to this part of the premises, as well as to every other part; but she took in the *locus in quo* only an estate in remainder, to come into the present enjoyment thereof at the expiration of the lease. Nor does the fact that there is no express reference to the leasehold estate either in the final decree in the foreclosure suit, or in the *fi. fa.,* support the implication contended for on behalf of the plaintiff. The mortgage covered three separate interests, viz., the leasehold estate of McVey, the fee of Woolston and Buckel, and the fee of Mrs. Peck. These several estates were assigned and transferred by Roberts in the order in which they have just been set out. The Chancellor decreed that the mortgaged premises should be sold in parcels in the inverse order of their alienation; that is to say, first, the Peck interest; next, the Woolston and Buckel interest, and lastly, the McVey interest. Having so decreed he then directed the sheriff to sell Mrs. Peck's interest first, and the Woolston-Buckel interest second. It may be said that although no express reference is made to the McVey interest, in this part of the decree, it impliedly directs that interest to be sold in case the other two parcels do not produce a sufficient sum to pay off the mortgage debt. If that is not a reasonable implication, then it becomes apparent that the Chancellor has failed to direct a sale of the whole mortgaged premises, in case such a sale is required to satisfy the mortgage debt. But whether the implication suggested is to prevail, or whether the failure to refer to the leasehold interest of McVey is a *casus omissus* is immaterial; for as the leasehold interest formed no part of the estate con-

134    COURT OF ERRORS AND APPEALS.

Schwartz v. King Realty & Invest. Co.    *94 N. J. L.*

veyed by Roberts to Mrs. Peck, and was therefore no part of the parcel which was directed by the Chancellor to be first sold by the sheriff, it was not extinguished by such sale.

That the view which we have expressed was that which was entertained by the Chancellor himself is made manifest by the fact that in disposing of the surplus money which had been paid into court he adjudged that the whole of it should be turned over to Mrs. Peck, a result which could not have been reached by him had he considered that the money produced by the sheriff's sale was the result of the sale of the joint interests of Mrs. Peck and Mr. McVey.

The judgment under review will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.    12.

*For reversal* — BERGEN, WHITE, ACKERSON, JJ.    3.